UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 NOV 17 P 12:58

US DISTRICT COURT
HARTFORD CT

MARIO RICHARDS,  :
on behalf of himself and  :       CIVIL ACTION NO.
all others similarly situated  :       3:03 CV00630 (DJS)
PLAINTIFFS,  :
:
v.  :
:
COMPUTER SCIENCES  :
CORPORATION  :       NOVEMBER 17, 2003
:
DEFENDANT.  :

**PLAINTIFF'S REPLY MEMORANDUM IN RESPONSE TO
DEFENDANT'S OPPOSITION TO PLAINTIFF"S MOTION FOR CLASS
CERTIFICATION AND PERMISSION TO SERVE NOTICE**

Plaintiff, Mario Richards, hereby submits, pursuant to Local Rule 7 (a), this reply memorandum in response to defendant's opposition to plaintiff's motion for class certification and permission to give notice to customer support analysts ('CSA')[1].

I.   **Certificication of the Class of Customer Support Analysts Furthers the Intent of the Fair Labor Standards Act, 29 U.S.C § 216 (b)**

Certification in this case would serve the purposes and benefits of a collective under § 216. A collective action allows… the plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issue of law and fact arising from the same. Presently, there are many CSAs who claim that they have been forced to work overtime and have not been paid regular or overtime pay for overtime hours worked.

---

[1] It should be noted that the complaint mistakenly referred to customer support analysts as computer systems analysts. There is no such position at CSC. Exhibit 1 ¶ 19. Defendant concedes that there is no such position. Def. Brf. P. 2. Any reference to anything but customer support analysts is mistaken.

These same workers [CSA's] have expressed their desire to make claims for overtime pay and opt-in to this case. Exhibits 1-6 ¶ 10-13, ¶ 17 [2]; see also, Exhibit 1 Schedule A. Allowing them to opt-in would further the intent and remedial purpose of the statute [29 U.S.C. 26 § (b)].

## II. Customer Support Analysts Are Similarly Situated

### A. The Job Duties of Customer Support Analysts Are The Same.

Defendant relies heavily on Mike v. Safeco Ins. Co. of America, No. 3:02 CV2239 (DJS) (D.Conn. July 15, 2003) for the proposition that a collective action may not proceed when a fact intensive inquiry and analysis need be performed for each member of the class. The Mike case is easily distinguishable from the present as the facts are inopposite.

In Mike, the plaintiff was a field representative who performed some tasks that were administrative in nature. Other claims representatives had varying responsibilities appraisal, estimates and settlement. Some representatives handled single specific assignments while others were responsible for the entire file. Some tasks were administrative while others were not. The court held that a collective action was not appropriate because a fact specific analysis would have had to be performed to determine the daily tasks of the various representatives. The present case is distinguishable as the duties of all CSAs are the same.

Defendant relies also on Cooke v. General Dynamics, 993 F. Supp. 56, 59-61 (D. Conn. 1997). In Cooke, there were thirteen plaintiffs with varying job titles and

---

[2] Exhibit 1, Affidavit of Mario Richards; Exhibit 2, Affidavit of Jeffery A. Chabotte; Exhibit 3, Affidavit of William Jergensen; Exhibit 4, Affidavit of Jessica Justis; Exhibit 5, Affidavit of Julie Blasiak; Exhibit 6, Affidavit of Shlomo Katz;

descriptions, ranging from material planning specialists, Sr financial analysts, project financial analysts and logistics specialists. The Cooke court denied a motion for summary judgment because there were disputed facts regarding the exempt status of the various positions. The present case is distinguishable as there is but one job title and description.

Defendant also relies on, Morisky v. Public Service Electric & Gas Co., 111 F. Supp. 2d 493 (D.N.J. 2000). Such reliance is misplaced, as the facts are inopposite.[3]

All customer support analysts are similarly situated in that their job description and job duties are the same. The primary function of all CSAs, both level I and level II, is troubleshooting computer problems via the telephone. Exhibits 1-3 & 5-6 ¶ 3; Exhibit 4 ¶ 4. The affidavits of Mario Richards, Jeffery Chabotte, Jessica Justis and William Jergensen, Julie Blasiak and Shlomo Katz support plaintiff's position that all CSAs are similarly situated. Richards, Chabotte, Justis and Jergensen are level I analysts, while Blasiak and Katz are level II analysts. Although the CSAs are identified as level I and level II, they are all CSAs nevertheless, with the same duties. They have all stated that their primary duty is troubleshooting via the telephone and that typical calls include, a.) user's password not working, b.) user's program or application not opening, c.) user unable to get into a file, d.) software reloads, and e.) email set-ups and f.) user unable to gain access to the network or internet. Exhibits 1-3 & 5-6 ¶ 3 & 6; Exhibit 4 ¶ 4 & 7. Julie Blasiak was a former level II CSA and Shlomo Katz presently works in the capacity of a level II CSA. Exhibits 5 ¶ 3 & ¶ 6 ¶ 3 & ¶ 6.[4]

---

[3] See analysis of the Morisky and Dean cases in plaintiffs memorandum in support od class certification dated September 2, 2003.
[4] Julie Blasiak performed as both level I and Level II CSA. As such she has first hand knowledge of the duties of a level II as compared to level I. Exhibit 6.

Although there are subtle differences in level I and II CSAs, these differences are only minor and do not go to the nature of the job or its duties. These differences are merely related to the identity of the particular client user who calls with a problem, access and time allotted to handle a call. Exhibits 5 & 6 ¶ 6. [5] These differences do not go to the nature or duties of the position or the skills required for the position. Exhibits 5 & 6 ¶ 6. Skills of CSAs are not an issue here, as the CSAs are required to use the procedures in the knowledge base in performing troubleshooting duties. An ad hoc inquiry needs not be performed here in determining similarly situated or exempt.

Defendant, in its brief, misquotes the plaintiff as stating that the level I and II CSAs are different. Defendant, in it brief, also erroneously refers to level II people as 'technicians'. The court must be wary of such an erroneous and phony title, as no such title exists. The CSAs, who have signed sworn affidavits, clearly, have not referred to themselves as 'technicians'. Exhibits 1-6. Neither does their job description refer to CSAs (level I or II) as 'technicians'. Defendant further erroneously misstates and misleads, on numerous occasions throughout its brief, suggested that the plaintiff referred to level II people to as technicians. See def. Brf. P. 12-15, 27. The defendant's interjection of this erroneous title [technician] is false, misleading and nothing more than a *'red herring'*. The court must be especially wary of the defendant's factual representations shown on pages 26-27 of its brief. There the defendant makes many assertions, which are not cited to supporting evidence. These pages, as well as other portions of the brief refer to 'various' and 'higher' levels of technicians at CSC. This is misleading as it implies many levels of much more experienced technicians. This is not

---

[5] Affidavits of Shlomo Katz and Julie Blasiak, level II CSAs.

the case. See Exhibits 1-7. These pages also refer to a number of platforms and clients. This is misleading as well, because these items do not change the nature of the position of CSA.

In the present case the CSAs job duties are, at the very least, of the 'same type'; ie. troubleshooting via the telephone. Just as in Scott, the job duties may be proved by gneneralized proof and there need not be a fact intensive inquiry into the duties of each CSA. See, Scott v. Aetna, 210 F.R.D. 261, 265 (D. Conn 2002), where systems engineers with similar but not identical duties were allowed to proceed collectively as a class.[6] All CSAs [level I and II] have a single job description. Exhibit 7. The defendant does not know of a separate job description for level II CSAs. See Fenter deposition p. 114. Exhibit 8. See also, Scott, supra where the court found it relevant that the plaintiff's were classified into a single job category.[7] The defendant has not refuted or introduced any evidence to show that CSAs [level I and II] do not perform the same primary job duty-troubleshooting via the telephone.

The defendant's erroneous and misguided assertions regarding the nature, duties and skills of CSAs may not influence the court, as the exempt nature of an employees position is determined by the employees actual work activities rather than the employer's characterization of them. Cooke, supra 61; see also, Goldstein v. Dabanian, 291 F.2d 208, 209 (3d Cir.), cert. denied, 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed. 2d 191 (1961).

Prospective class members need not be absolutely identical anyhow. Moss v. Crawford, 201 F.R.D. 398 (W.D. Pa 2000). Variations in duties job functions and hourly billing rates do not differentiate the collective basis of the class to the extent that it

---

[6] See analysis of Scott v. Aenta, @ Plaintiffs memorandum in support of class certification p. 10;
[7] Note: In the present case the classification is not merely a category as was the situation in Scott. Here the CSAs have the same job description.

defeats the primary objectives of a § 216 (b) action. Id. at 410. In Moss, the opt-in plaintiffs were workers during the clean-up of the Ashland oil spill and the Exxon Valdez oil spill. The opt-in plaintiffs had a variety of positions at various branch and temporary offices. Positions included adjusters, monitors, invoice reviewers, quality control supervisors, adjusters & supervisors[8], monitor and inventory control.[9] Moss v. Crawford, supra, 201 F.R.D. 410. Although there were differences in job duties and geographic assignments, the plaintiff in Moss asserted a common claim. (ie. that the defendant violated the FLSA by failing to compensate in overtime wages for their work during the Ashland and Exxon Valdez oil spills). Moss v. Crawford, supra, 201 F.R.D. at 410. The court opined that the duties of opt-in plaintiffs who held the same position could not be substantially distinct from those of another opt-in plaintiff who worked in the same position. Thus, the court was able to coordinate the exemption issue by ascertaining the duties of each respective position. Moss v. Crawford, supra, 201 F.R.D. at 410. The Moss court further opined that these factors weighed in favor of one lawsuit rather than seventy separate actions. Moss v. Crawford, 201 F.R.D. at 411. Applying this rationale to the present case, the proposed class of CSAs should be afforded the opportunity to proceed as a collective action.[10] Any other finding would controvene from the remedial purpose of the FLSA.

---

[8] The adjuster/supervisor position appears to be a single position in contrast with those adjusters who were not supervisors.
[9] A single position.
[10] Plaintiff does not concede that the duties of Level I and II CSAs are different.

### B. The Proposed Opt-in Plaintiffs Are Required To Perform Their Duties Prior To and After The End Of Their Shift Without Being Paid Overtime

CSAs [level I and II] are further similarly situated in that they are required to perform set-up, break-down and email functions prior to the start and after the end of their shift. Exhibits 1-3 & 5-6 ¶ 7-13; Exhibit 4 ¶ 8-14. They are further required to handle troubleshooting calls after the end of their shift. They [CSA's] are not paid overtime or any wage for this work performed in excess of forty hours per week. Exhibits 1-3 & 5-6 ¶ 7-13; Exhibit 4 ¶ 8-14.

Clearly, the defendant has enunciated a policy mandating that CSAs be on the Telephone, taking incoming troubleshooting calls when their shift begins and past the end of the shift. Management has not differentiated this policy between level I and II CSAs. A fortiori, all CSA's [level I and II] are working overtime, while not being paid for it and are similarly situated.

### C. Customer Support Analysts From Other Geographic Locations Must Be Allowed To Opt Into The Class

The mere fact that analysts are employed in another state, as well as Connecticut, should not prevent those analysts from being a part of the class. Rodilico v. Unisys Corp. 199 F.R.D. 468 (E.D.N.Y. 2001) (where the court allowed a collective action to proceed, despite plaintiffs coming from forty-nine different departments). The court, in Rodilico, opined that it was irrelevant to liability that plaintiffs were from different engineering departments.[11] See, Frank v. Capital Cities Communications, 48 FEP Cases 552

---

[11] Defendant (manager Stephen Fenter) testified that there were CSA's in Los Colinos Texas and San Diego, California. See, Fenter Affidavit ¶ 5, depo. P 131-132. see also, Defendant's memorandum in

(S.D.N.Y. 1983). In Frank, a collective action in an ADEA case was certified where the plaintiffs were from several states performing a wide variety of jobs. The Frank court opined, "to deny them class treatment would be tantamount to declaring that any employer can escape ADEA class liability so long as it discriminates against a diverse group of aged employees over a wide geographic range in a number of ways…" Id. In the present case the defendant seeks to prevent class treatment based on the most subtle and minute differences between CSAs. Defendant has gone to the extreme of misstating the title, responsibilities and duties of CSAs. Franks noted the unfairness in avoiding liability in this manner.

Further supporting plaintiff's claim that CSA's in Texas, California and Pennsylvania[12] is the company's ISO 09001 certification. CSC complies with and is ISO9001 certified. See GIS North America Global Production Operations Quality Plan, Exhibit 8. The quality plan describes the implementation of the GIS Global Production Operations processes and supporting documentation. Exhibit 8, § 1.1 p. 5. It identifies documentation supporting quality requirements and responsibilities that define the daily operations related to delivering Global Infrastructure Services (GIS) in North America. Exhibit 8, § 1.1 p. 5. The purpose of the quality plan is to define the structure of the Quality System, and comply with the requirements of ISO 9001. Exhibit 8, § 1.1 p. 5. The quality management and policies laid down in the quality plan are intended to be compatible with the requirements defined by ISO 9001:2000 standards, applied to the IT

---

opposition dated October 14, 2003. Fenter testified at deposition that he also supervises CSA's in Pennsylvania.

[12] Defendant's affidavits and brief exclude Pennsylvania from employing CSAs. This is misleading, as Fenter testified that there are CSAs in Pennsylvania, whose primary duties are troubleshooting calls. See Fenter depo p. 131-33.

environment. Exhibit 8, § 1.2 p. 5. The quality plan applies to customer support services (CSS).[13] Exhibit 8, § 1.4 p. 5.

ISO 9001 certification, by its very nature, implies uniformity and quality in policies, procedures, service and documentation. In light of Computer Science Corporation's ISO 9001 certification, as shown in the GIS North America Global Production Operations Quality Plan (Exhibit 8), it cannot be said that the CSA's position, duties or responsibilities, whether it be in Connecticut, California, Texas or Pennsylvania, are different.

### III.  The Affidavits of Stephen Fenter and Anne Daniels Are Misleading and Inaccurate

The affidavits of Stephen Fenter and Anne Daniels are inappropriate and inapplicable to the issues related to § 216 (b) class certification as well as misleading and inaccurate.[14] Fenter's affidavit does not address the position of CSA in the context of being similarly situated [or not similarly situated]. Fenter made many conclusory statements, in his affidavit, regarding help desk employees and level III. This is inappropriate it confuses the 'similarly situated' issue by placing additional jobs and positions into the mix. Level III employees include various on site tech people who hold other positions. Exhibit 1 ¶ 17. These on site employees are not proposed members of the class.[15] Exhibit 1 ¶ 17. By making generalized statements regarding level III and

---

[13] Customer Support Services Center comes within Global Production Operations. Exhibit 8, § 2.2 p. 7.
[14] The arguments contained in defendant's brief are equally misleading and inappropriate as they substantially rely on the affidavits of Fenter and Daniels.
[15] The on-site people are not presently propsosed members as plaintiff does not have knowledge of the particulars of the position. Defendant has withheld this information in discovery. A motion to compel is presently pending regarding discovery of information and documents that will ultimately answeree many questions of the suitability of other site people as members of the class.

technical employees, the defendant muddies the water, interjecting yet another *'red herring'* regarding the issues of class certification of CSAs.

In particular, paragraph 8 is misleading, as on site people are not proposed members of the class. The statement could be construed as meaning that help desk exists only in Norwich. The *real* issue is whether CSAs are similarly situated and are they located elsewhere (ie. PA, TX & CA).

Paragraph 7 is misleading as it refers to 'help desk' generally. It further states that help desk diagnoses and solves a wide array of issues. This is misleading as it gives the appearance that CSA's on their own diagnose and solve problems, when, in reality, they do not solve anything on their own and are *absolutely* required to to follow the procedures set forth in the knowledge base in troubleshooting for client users. Exhibits 1-6 ¶ 3-5. Paragraph 20 is similarly misleading by suggesting that CSAs resolve issues by skills, knowledge and ability. Again, the knowledge base plays the greatest part in resolving issues for the client user. Further, these issues go to liability and the exempt nature of the CSA, rather than whether the CSAs are similarly situated. [16]

Paragraph 9 is misleading as it refers to help desk as having distinct and varying job duties. First this is vague and conclusory, as it does not state the particular help desk position to which it refers. The CSAs have described their job duties. Exhibits 1-6 ¶ 3 & These job duties are not the least bit varying and distinct. The duties are obviously identical, in that all CSA's [level I & II] perform troubleshooting calls via the telephone, using the procedures in the knowledge base. Exhibits 1-6 ¶ 3-6. There is but one job description for all CSAs. Exhibit 7.

---

[16] Many other items raised by Fenter in his affidavit are 'red herrings' as they are entirely insignificant and unrelated to the issue of class certification. Ie. Items such as names of clients, Fenter depo ¶ 13; service agreements, Fenter depo ¶ 15-16; types of operating systems, Fenter depo ¶ 17;

Paragraph 12 is misleading and untrue. CSAs do not resolve system or hardware problems. Hardware problems are referred to and handled by site people. Exhibit 1 ¶18. The CSA does not analyze and compare possible courses of action. Neither does the CSA provide or decide on solutions to technical staff. Exhibits 1-6 ¶ 3-6. The knowledge engineer does that. Exhibit 1 ¶ 5.

Paragraph 22 is true in that the knowledge base is a tool for the CSA to use, however, Fenter minimizes the importance of the knowledge base and the *mandate* that it be used at all times. Exhibit 1-6 ¶ 3-5.

Paragraphs 26 and 27 are misleading as they attempt to "*fool*" the court into believing that level II CSA's are 'technicians'. This is an obvious attempt to falsely differentiate level II CSA's for the purpose of preventing them from becoming members of the class. The affiants, who are all CSA's [level I and II] clearly stated their title as being CSA and have described their job duties. Exhibits 1-6. Neither the job description nor the CSA's have referred to level II CSA's as technicians. Exhibits 1¶16; see also Exhibits 2-6 and Exhibit 7.

Paragraph 27 is further misleading, as it again attempts to falsely differentiate level II CSA's as being extraordinarily skilled. The CSA position does not require formal eduacation or extensive skills. Exhibit 1 ¶20; Exhibits 2 & 3¶ 16; Exhibit 5 ¶ 15;

Also misleading is the defendant's concentrated effort to pretend that the plaintiff is attempting to certify a class of computer systems analysts. See def brf p. 2. This is misplaced and not the case. The proposed members of the class are customer support analysts. Exhibit 1-6. The plaintiff, as well as the affiants, have clearly referred to themselves as customer support analysts (CSA). See Exhibits 1-6. Their job description

is that of customer support analyst. Exhibit 7. The CSAs are those seeking to opt-in as members of the class and any reference to other titles is erroneous and mistaken. Exhibit 1 ¶ 19.

It flies in the face of the remedial purpose of the FLSA to restrict collective action for the reasons which the defendant suggests. In deciding whether a collective action may proceed, it matters not which client an analyst works with or the contractual agreement between the defendant and a client or whether there are some subtle differences in tasks. These issues are merely *'red herrings'*. Many of the defendants claims go to the exempt or non exempt nature of the position [CSA] and thus liability which need not be performed ad hoc as they are similarly situated. Such is not relevant or appropriate for a discussion regarding class certification but is an issue for trial. Whether the plaintiff can meet its burden in the liability stage is irrelevant to the issue of § 216 certification. Vaszlavik v. Storage Technology Corp., 175 F.R.D. 672, 678 (D. Colo. 1997).

## IV. Defendant's Attempt To Disparage and Malign The Plaintiff Is Misplaced

Defendant refers to the plaintiff, Mario Richard's, affidavit [dated September 1, 2003] as a "sham". See, Def. brief p. 3. Surely, such a remark and its supporting comments are an attempt to mislead, sway and bias the court against the plaintiff, in this case.

The defendant goes to great lengths to discredit the plaintiff, suggesting that the plaintiff is not a proper person to represent the class. Defendant has shown the

court instances of counseling of the plaintiff. Such is merely another 'red herring'. The plaintiff performs his position in an exemplary manner and is well respected by both management and his peers.

The clear weight of authority holds that Rule 23 procedures are not appropriate in § 216 (b) actions. <u>Rodilio v. Unisys Corp.</u>, 199 F.R.D. 468 (E.D.N.Y. 2001). The similarly situated requirement of 29 U.S.C. § 216 (b) is considerably less stringent than the requirement of Fed. R. Civ. P. 23 (b)(3) that common questions predominate. <u>Heageny v. European Am. Bank</u>, 12 F.R.D. 125, 127 (E.D.N.Y. 1988); Defendant has not cited any relevant or authoritative precedent in support of its claim that the plaintiff is not a proper representative. The fact that plaintiff's co-workers have given him a vote of confidence and wish to opt-in to this case is telling. Exhibit 2 ¶ 17; Exhibit 3 ¶ 17; Exhibit 4 ¶ 16; Exhibit 5 ¶ 2. Exhibit 6 ¶ 15. The court should be mindful of the CSAs who are co-workers of the plaintiff and who have voiced support for the plaintiff and shown a desire to become members of the class.

**V. Notice To All Present and Former CSA's Is Proper At This Time**

"…at this juncture, when a large number of current and former employees…have already opted into this case principles of efficiency and judicial economy militate in favor of maintaining this action as a collective one…" <u>Realite v. Ark Restaurants Corp.</u>, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998); see also, <u>Krueger v. New York Telephone Co.</u>, 1993 U.S.Dist LEXIS 9988, WL 276058 (S.D.N.Y. July 21, 1993).

Simply because the defendant disputes plaintiff's allegations does not negate appropriateness for class notice. <u>Camper v. Home Quality management</u>, 200 F.R.D. 516,

2000 U.S. Dist. Lexis 21099 (9/21/00).

To deny class treatment would be tantamount to declaring that any employer can escape class liability so long as it discriminates against a diverse group of people over a wide geographic range in a number of ways, such as term, salary, promotion and working nconditions. Heagney v. European Am. Bank, 12 F.R.D. 125 (E.D.N.Y. 1988); citing, Frank v. Capitol Cities Communications, supra.

> "certainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.'" (citations omitted)" Cook v. United states, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) Even if all proposed class members turn out not to be similarly situated, notification at this stage rather than after further discovery, may enable more efficient resolution of the underlying issues in the case. Krueger, 1993 U.S. Dist Lexis 9988. 1993 W.L. 2.

In order to effectuate notice, the court must also order the defendant to provide the names and addresses[17] of all CSA's at various locations in Connecticut, Texas, California and Pennsylvania and other locations that CSA's have worked that have not been disclosed in discovery by the defendant Roebuck v. Hudson Valley Farms, Inc., 239, F.Supp. 2d 234 (N.D.N.Y. 2002).

## Conclusion

Customer support analysts are similarly situated. Their duties are the same and they are working overtime without being paid for it. The exempt/non-exempt analysis is the same for all CSAs and must be reserved for trial. Upon receipt of the names and addresses of current and former CSAs in Connecticut, Texas, Pennsylvania and

---

[17] present or last known addresses;

California, the plaintiff may serve notice upon these persons so that they may pursue there rights under the FLSA.

>                                Plaintiff,
>                                Mario Richards
>
>
>                         By _____
>                                Michael J. Melly
>                                Fed. Bar No. ct17841
>                                143 Oneco Avenue Suite 4
>                                New London, CT 06320
>                                Tel: (860) 447-1990
>                                      (860) 989-9613

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed on 11/17/03
To:
Tasos C. Paindiris, Esq.
William Anthony, Esq.
Jackson Lewis
55 Farmington Avenue
Suite 1200
Hartford, Ct 06105

_____
Michael J. Melly