UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MARIO RICHARDS,** : | 2003 NOV 20 P 3:31 |
| on behalf of himself and : | |
| all others similarly situated : | **CIVIL ACTION NO.** |
| **PLAINTIFFS.** : | **3:03 CV00630 (DJS)** |
| : | |
| v. : | |
| : | |
| **COMPUTER SCIENCES** : | |
| **CORPORATION** : | November 19, 2003 |
| : | |
| **DEFENDANT.** | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE AFFIDAVIT OF MARIO RICHARDS

Plaintiff, Mario Richards, submits this memorandum in opposition to defendant's motion to strike the affidavit, or portions thereof, of Mario Richards, dated October 14, 2003.

### Procedural

Plaintiff commenced this action for claims of overtime wages pursuant to The Fair Labor Standards Act, 29 U.S.C. 207, et seq. Plaintiff filed a motion for class certification and permission to serve notice to class members on September 2, 2003. Plaintiff submitted a sworn affidavit in support thereof. Exhibit 1. Defendant, on October 14, 2003, filed a motion to strike such affidavit [or portions thereof] on the grounds that the plaintiff was an incompetent witness and that his statements and assertions contained in the affidavit were conclusory.

### Argument

Defendant argues that plaintiff's affidavit is conclusory and the plaintiff is

without sufficient personal knowledge of the facts alleged. The defendant further describes plaintiff's affidavit a "sham".[1] This is clearly an attempt to prevent the plaintiff from presenting evidence in support of class certification. This tactic furthers the defendant's discovery tactics preventing discovery of information and materials relevant to plaintiff's claims and class issues.[2]

Whatever the results of the plaintiff's and the class' claims, claims of such magnitude should not be aborted on such technical grounds, if that result can be legitimately avoided. Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990), Blackmun dissenting.. The defendant's position fails to appreciate the spirit and goal of the Federal Rules of Civil Procedure that litigation "shall be construed to secure the just, speedy and inexpensive determination of every action. Fed. R. Civ. P. 1. In this case, the defendant has, thus far, attempted just the opposite, by preventing the plaintiff from obtaining relevant information and documents and further attempting to prevent the court from receiving relevant information.

Defendant essentially claims that the plaintiff is not competent to testify. This proposition contravenes Fed. R. Civ. P. 601 which declares every person a competent witness, unless shown otherwise. Defendant failed to acknowledge the statements in plaintiff's affidavit, which do in fact show personal knowledge of the facts to which he testifies. For instance, the defendant ignores that the plaintiff was a customer support analyst at the defendant's Norwich Connecticut facility since February 2001. Exhibit 1

---

[1] Def brief in opp to class cert. dated October 14, 2003.
[2] Defendant objected to almost all of plaintiff's discovery requests. A motion to compel is pending. The defendant, through Stephen Fenter [manager of Norwich facility], also refused to answer a number of questions at deposition and, curiously, did not know the answers to many other questions.

¶ 2. Plaintiff's described his duties as a customer support analyst and the manner in which he worked overtime without being paid. Exhibit 1 ¶ 5-14. He has worked [and continues to] with other analysts and is aware that other analysts perform the same duties and work the same overtime as does he. Exhibit 1 ¶ 15.

Clearly, the plaintiff has personal knowledge of other analysts performing similar duties. This is not one of those cases where the plaintiff has no personal knowledge of the facts to which he testifies [in an affidavit]. see, U.S. v. Roman, 884 F. Supp. 126, 127 (S.D.N.Y. 1995), ("Whether a witness is competent to testify depends on the individual's ability to observe, remember, to communicate, and to understand that the oath imposes a duty to tell the truth."); United States v. Lyon, 567 F.2d 777 (8th Cir. 1977) (witness must have the ability to observe);

It cannot be said that the plaintiff could not have perceived or observed that which he testified to. U. S. v. Sinclair, 109 F.3d 1527, 1536 (10th Cir. 1997). The court can reasonably believe here, that the plaintiff had personal knowledge of the facts to which he testified. Folio Impressions v. Byer Cal., 937 F.2d 759, 764 (2d Cir. 1991). see, SEC v. Singer, 786 F. Supp. 1158, 1167 (S.D.N.Y. 1992) (witness' testimony admissible despite a certain degree of memory, recollection or perception loss). The evidence contained in plaintiff's affidavit is relevant, as the statements make the issue of similarly situated more probable than without the evidence. Fed. R. Civ. P. 401. Rule 401's "basic standard of relevance...is a liberal one." Daubert v. Merell Dow Pharms., Inc., 509 U.S. 579, 587, 113 S. Ct. 2786, 2794 (1993); see, Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1518 (10th Cir. 1995) (while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.")

Completely diminishing the defendant's arguments regarding plaintiff's affidavit and giving credibility to plaintiff's statements and assertions are affidavits from six co-workers, testifying that they [as customer support analysts] perform the same duties as the plaintiff and are required to work similar overtime without being paid. See Exhibits 2-6, (attached to plaintiff's memorandum in response to defendant's memorandum in opposition to class certification and permission to give notice). Further, plaintiff submitted another affidavit containing additional information. See Exhibit 1 (attached to plaintiff's reply brief dated November 17, 2003; See also, Schedule A, attached to affidavit of Mario Richards dated November 12, 2003.[3]

## Conclusion

The defendant's request to strike plaintiff's affidavit, thereby preventing the plaintiff from presenting relevant information to the court regarding the issues of class certification and notice, do not comport with the spirit of the Federal Rules and contravene the remedial purpose of the Fair Labor Standards Act 29 U.S.C. 207, et seq. For the foregoing reasons the defendant's motion to strike plaintiff's affidavit in support of class certification dated September 2, 2003 must be denied.

---

[3] The November 12, 2003 is a new and different affidavit of the plaintiff attached as exhibit 1 to plaintiff's reply memorandum dated November 17, 2003. Schedule A contains the names of several co-workers who wish to opt-in to this case and make similar overtime claims as the plaintiff.

Plaintiff,
Mario Richards

By _____
Michael J. Melly
Fed. Bar No. ct17841
143 Oneco Avenue
Suite 4
New London, CT 06320
Tel: (860) 447-1990
     (860) 989-9613

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed on 11/19/03
To:
Tasos C. Paindiris, Esq.
William Anthony, Esq.
Jackson Lewis
55 Farmington Avenue
Suite 1200
Hartford, Ct 06105

_____
Michael J. Melly

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARIO RICHARDS,
on behalf of himself and
all others similarly situated
PLAINTIFFS,

v.

COMPUTER SCIENCES
CORPORATION

DEFENDANT.

CIVIL ACTION NO.
3:03 CV00630 (DJS)

September 1, 2003

## AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

1. I am over the age of eighteen and believe in the obligation of an oath.

2. I, Mario Richards, have been an employee of Computer Sciences Corporation since February 19, 2001. I work in the capacity of computer systems analyst a/k/a customer support analyst ("CSA") at Norwich, Connecticut.

3. There are a large number of current and former employees who held or currently hold the position of CSA who desire to opt in to this case.

4. I was initially hired by CSC as an hourly contract employee and became permanent. I do not have and CSC does not require advanced education and experience in order for hire or to work as a CSA. The majority of CSAs are initially hired as hourly contract employees and later become permanent. Advanced education and experience is not required for the position of CSA. Upon hire the CSA receives on the job training. The position of CSA is among the lowest of positions at CSC in the sense of knowledge, skills and pay scale.

5. As a CSA, I perform basic trouble shooting functions via telephone for the client user using tools and access provided by CSC. In performing troubleshooting functions by telephone, I serve a support role for the client user. I am the first point of contact for user issues, also known as level 1.

6. Upon taking an incoming call, I must verify basic information of the user such as name, telephone number, location of the user and other basic information. I then listen to the issue or problem of the user and resolves the problem, if possible. Typical trouble shooting calls include problems such as password not working, program or application not opening and printer not printing. Issues that

Exhibit 1

are not resolved by me (CSA) at level 1 are forwarded to a CSA at level 2. I remain on the telephone, performing the foregoing duties for the duration of my shift.

7. Prior to the commencement of the work day I must perform set-up functions on my computer. Typical set-up functions include, a.) Logging on to the domain or domains of the business units of the clients that I am required to support; b.) Logging on to each application and components of those applications applicable to the business units of the clients that I support;

8. Prior to the commencement of the work day I was and continues to be required to log into my e-mail programs and applications, which include Lotus Notes and MicroSoft Outlook. Upon logging into e-mail, I am required to read and respond appropriately to each e-mail.

9. Upon completion of his work day, I am required to break down the computer at which I works, requiring the following tasks to be performed: a.) closing out each application and component signed on throughout the day; b.) routine software maintenance including deleting temp files and temporary internet files and, clearing cache files; c.) using operating procedures to shut down the computer and waiting for the computer to write all files to the hard drive and re-booting the computer.

10. I am required to perform similar set-up and e-mail functions prior to commencement of the work day and do not receive regular or overtime wage for such work.

11. I am further required to perform my normal trouble shooting functions by telephone after my scheduled shift has ended and do not receive regular or overtime wage for such work.

12. I am required to perform the foregoing break-down functions, upon completion of my scheduled work day and do not receive regular or overtime wage for such work.

13. I have regularly worked in excess of forty hours per week without receiving regular or overtime pay for hours worked in excess of forty.

14. I do not have managerial responsibilities at Computer Sciences Corporation. My tasks and duties are relatively simple and uncomplicated, being performed according to procedure and requiring no independent judgment or discretion.

15. I work with many other CSAs and have personal knowledge of the responsibilities, tasks and duties of other CSAs employed at CSC and working in Norwich, Connecticut. All CSAs have the same responsibilities, tasks and duties as do I, and that have been described herein.

16. I have personal knowledge that other persons in the position of CSA are required to perform the same set-up, break down and email functions that I have described above prior to and after their scheduled shift and do not receive regular or overtime wage for such work. Further, other CSAs perform their normal trouble shooting functions by telephone after their scheduled shift has ended and do not receive regular or overtime wage for such work.

17. I have personal knowledge that CSC employed persons in the States of Maryland, Texas and California in the position of CSA within the last three years performing the same duties and tasks as described herein.

Dated at East Lyme this 1st day of September 2003.

_____
Mario Richards

State of Connecticut    )
                        ) ss.   East Lyme         September 1, 2003
County of New London)

Subscribed and sworn to before me this 1st day of September 2003.

_____
Michael J. Melly
Comm. of the Sup. Court