UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIO RICHARDS, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION NO: |
| | * | |
| v. | * | 3:03 CV 00630 (DJS) |
| | * | |
| COMPUTER SCIENCES CORPORATION, | * | |
| | * | DECEMBER 22, 2003 |
| Defendant. | * | |

**DEFENDANT'S SUR-REPLY TO
PLAINTIFF'S REPLY**

**I. INTRODUCTION**

Defendant Computer Sciences Corporation (CSC) submits this sur-reply because plaintiff Mario Richards (Richards) has improperly attempted to remake his original motion for certification and notice in his reply brief. In a separate filing, CSC has asked the court to strike or disregard all or most of the affidavits Richards included with his reply. In this brief, CSC addresses those affidavits on their merits, and shows that Richards has still failed to make the "modest factual showing" necessary to warrant sending notice to his proposed class because: (1) he has provided no evidence that any Customer Service Representative (CSR) who was employed outside the Norwich facility wants to participate in this suit; (2) he has failed to show that he is similarly situated to the other CSRs he wishes to include in his class, either at the Norwich facility where he

works or at other locations where he has never worked; and (3) he has failed to show that CSC may have violated the FLSA with respect to his proposed class of CSRs.

Without explicitly saying so, Richards is arguing that he and all the other CSRs who were classified as Level I or Level II, do not meet the administrative exemption test under the FLSA, and consequently should have been paid overtime for hours worked over 40 in a work week. Significantly, Richards does not challenge in any way CSC's contention that the CSRs also qualify as exempt under the computer related exemption set forth at 29 C.F.R. 541.303. Richards simply ignores this exemption and offers no evidence that the CSRs are not covered by it. Thus, even if Richards could show a legitimate evidentiary question whether the CSRs qualify for the administrative exemption, his motion for notice and certification fails because he offers no admissible evidence that the CSRs do not qualify under the computer related exemption. It was Richards' burden to provide some evidence of a class violation of the FLSA.

While the merits of the administrative exemption's application to the CSRs need not be debated here, the elements of the administrative exemption test matter in a motion for notice and conditional certification because it is Richards' burden to show that the CSRs he wants to join his suit may not have met some mandatory element of that test. If Richards does not show with competent, admissible evidence that the class of employees he proposes, *as a class*, may have failed some element of the administrative exemption test, his motion fails as a matter of law.

Richards' motion focuses on only one of the three elements in the short test for the administrative exemption: whether the class he proposes had the discretion and independent judgment necessary to qualify for the exemption. Richards does not dispute

2

that the CSRs meet the "salary basis" element or the "primary duties" element of the administrative exemption. Accordingly, in this sur-reply CSC addresses the following questions:

(1) Whether Richards has established that any CSR outside the Norwich facility where he works wishes to join his suit?

(2) Whether Richards has sufficiently shown that he is similarly situated to the other CSRs he wishes to include in his class?

(3) Whether Richards has sufficiently shown that the class of CSRs he proposes may have lacked the discretion and independent judgment required for the administrative exemption?

The answer to each question is no. Richards has failed to establish that he is entitled to notice to his proposed class. His motion must be denied.

## II. ARGUMENT

1. <u>Richards has Failed to Show that Any CSR Outside the Norwich Facility Desires to Participate in His Suit.</u>

In evaluating Richards' motion, "The district court must satisfy itself that there are other employees who desire to opt-in and who are similarly situated with respect to their job requirements[.]" *Dybach v. Florida Department of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991). Richards has not shown that any CSR outside Norwich, Connecticut desires to opt-in. Yet, he proposes a class covering every current or former CSR who worked for the company in Connecticut, California, Texas and Pennsylvania. The consent of just five other CSRs at the Norwich facility cannot be expanded into a nationwide "desire to opt-in." Having failed to identify a single CSR from the California, Texas or Pennsylvania facilities, Richards has failed to meet his burden of showing a

3

CSR's desire to opt-in even remotely proportionate to the class he proposes. Consequently, he should be denied his request to include CSRs from the other facilities.

2. <u>Richards Has Failed to Show Sufficiently That He is Similarly Situated to the Other CSRs Either at the Norwich Facility Where He Works or the Other Facilities Where He Has Never Worked.</u>

Richards' reply brief is full of sweeping assertions such as: "All customer support analysts are similarly situated in that their job description and job duties are the same," and "The primary function of all CSAs, both Level I and Level II are troubleshooting computer problems via the telephone." (Reply p. 3).

But, saying something is so and showing it are two very different burdens. It is Richards' burden to show that he is similarly situated to his proposed class. For his showing, Richards includes affidavits from five other Norwich CSRs, an undated job description confined to the Norwich facility, and a document he calls the "ISO09001 certification" (ISO). These documents are his only evidence that he is similarly situated to the nation-wide class he proposes.

Only three of the six affiants (including Richards) claim to have any knowledge of what other CSRs do at the Norwich facility. None of the affiants claim to have any knowledge of what any CSR outside of Norwich does. The three, Richards, Chabotte and Jergensen, are all CSR Level I. In a single conclusory paragraph, Chabotte and Jergensen allege: "I am familiar from working with and speaking to other analysts (CSA's) that other CSA's perform the same duties as I do and are under the same requirements as those which I have described in this statement." In other words, their sole testimony that they are similarly situated to other CSAs is hearsay. They do not submit a single fact to

4

support what the person knows about the duties or responsibilities of other CSRs at Norwich. Richards' affidavit makes the same general sweeping allegations of knowledge by "observing and speaking to other analysts" that they all do the same thing.

Yet it is undisputed that the CSRs do not do the same thing because they all have different clients and different service labor agreements (SLAs) that define their duties. Richards' assertion that the CSRs each turn on their computers in the morning the same way, because he has "observed" it, is not evidence of similar job duties and discretion. Richards is just begging the question of whether any particular CSR, let alone his class, uses the independent judgment and discretion under the administrative exemption. That question is not answered in the least by an assertion that "we all use computers" or "we all talk on the phone" or "we all use databases."

In stark contrast to Richards' conclusory assertions of similarity is CSC's specific evidence of the vast differences among the CSRs. Steve Fenter, the Senior Manager of the Help Desk at Norwich, testified that "the duties for each of the Level I and Level II positions are distinct and varied based upon technical complexity, client's specific expectations and contractual obligations." (Fenter Aff. ¶ 9). Fenter testified that the CSR Level I position requires broad-based technical expertise and understanding of technical terminology, computer concepts and specialized knowledge about computer hardware, software applications, network internet applications and operating systems. (Fenter Aff. ¶ 11). He testified further that CSRs are required to analyze information and the comparison of possible courses of action. (Fenter Aff. ¶ 12). But, it is the CSR who decides on a course of action after considering various possibilities and is required to recommend a solution or other action to be taken. (Fenter Aff. ¶ 12).

5

Fenter made it clear that the CSRs in different geographic locations support different clients and that CSRs like Richards are generally assigned to a specific client account and are required to become familiar with the technical systems, contractual requirements and process requirements of the client they serve. (Fenter Aff. ¶¶ 13, 14). Fenter made it explicit that the duties and responsibilities of each CSR vary with the SLA that CSC has with that client for which that CSR is responsible. (Fenter Aff. ¶¶ 15, 16). Each CSR at the Norwich facility must rely on a host of databases in order to make a recommendation to a client. (Fenter Aff. ¶ 17). Fenter testified that the CSRs are independently responsible for compliance with the SLA requirements; that they are required to utilize their technical ability, knowledge and skills to resolve client issues; that the CSR position requires theoretical and practical application of highly specialized knowledge in computer systems. (Fenter Aff. ¶¶ 19, 22). Fenter testified consistently with Richards' deposition testimony, but contrary to Richards' second affidavit that CSRs may use the knowledge base in order to assist themselves in making a recommendation on how to solve a client problem. (Fenter Aff. ¶ 22). Fenter testified that CSRs must exercise judgment, analytical and oral communication skills along with specialized knowledge about a client's computing environment and interrelationships among systems components to visualize the technical situation facing the client. He also testified that analytical and problem-solving skills are critical for successful job performance. (Fenter Aff. ¶ 20).

CSC also submitted testimony from Amos Daniels, who is the Operations Manager at the Los Collins, Texas facility. Daniels' testimony is unchallenged by Richards. Daniels affirms Fenter's testimony that what determines a CSRs level of

responsibility, discretion and judgment is the SLA with that particular client. (Daniels Aff. ¶ 8). He testified that Level I and Level II CSRs are distinct and varied based upon technical complexity, client's specific expectations and contractual obligations. (Daniels Aff. ¶ 5).

Against CSC's specific testimony, the six affidavits that Richards gives in his reply brief do not identify any of the customers or clients that each affiant services, nor do they discuss any of the SLAs, which in large part define the level of responsibility, technical expertise, discretion and judgment that must be used in handling that client. It is undisputed that the CSRs at Norwich or the other facilities do not all work for the same client. None of the six affiants describe the substance of what he or she must do to serve the client for which he or she is responsible. Turning on a computer in the morning is procedural not substantive; it discloses nothing about the judgment the affiant must bring to bear on each SLA and each database for which he or she is responsible. Nor do any of the affiants testify as to having any personal knowledge of what any other CSR in Norwich or elsewhere has to do in order to serve their respective clients with respect to their SLAs. There is no evidence in this record that any of the six affiants have any knowledge of the contents of SLAs for which any other CSR is responsible.

"Because the proof in this case is specific to the individual, [Richards] has not provided evidence of a common thread binding his proposed class of employees. *Mike v. Safeco Ins. Co. of America*, 274 F. Supp.2d 216, 220-21 (D. Conn. 2003). (Fenter Aff. ¶ 15, 16). Richards' conclusory assertions about the class are not "evidence of a common thread." Richards offers nothing to show how the limited exposure he has, even at the Norwich facility, in as much as his duties are confined to a single customer, can translate

7

into a factual showing that what he does is similar to what every CSR does. The only thing the CSRs in Richards' proposed class have in common is one or the other job titles. But, job titles cannot homogenize what CSC has shown to be the great variations among CSRs as to what they do and how they do it.

The only other evidence plaintiff submits in support of his attempt to establish a national class is what he refers to as "the company's ISO09001 certification." (Reply p. 8). Richards does not explain what, in this ISO document, supports his contention that he is similarly situated to customer service persons in California or Texas or Pennsylvania with whom he has never worked. The document specifically discusses management policies, not CSR policies. It is a quality plan, not a job description. Richards summarizes this document with the conclusory assertion: "In light of the Computer Sciences ISO09001 certification, it cannot be said that the CSA's positions, duties and responsibilities, whether it be in Connecticut, California, Texas or Pennsylvania, are different." (Reply p. 9).

However, the ISO suggests just the contrary. Although the ISO does not purport to be, and is not, a document that sets out uniform job descriptions for anyone, this document significantly states as follows. In paragraph 2.3, "Roles and Responsibilities:"

> "Some roles such as the quality management representative are common across the organization. A staff member may perform in one or more roles in the organization. *Site specific roles and responsibilities relate to the associated processes and reference procedures and work instructions employed to undertake the activities. These roles and responsibilities are identified in the documentation stored locally in each data center as discussed in the appropriate appendix A.*" (emphasis added).

Additionally, in Section 2.8 of the ISO under "Customer Requirements," it further states: "In addition, each local support operation center has a detailed communications instruction document that focuses on sharing customer requirements and SLA with their specific employees." The thrust of this language is not that CSRs throughout the country all do the same things everywhere, but that each center has its own roles and responsibilities, job duties and technical requirements, depending on the clients it serves and the management teams at that location. The local autonomy of each support center is essential to CSC's goal of meeting diverse client needs and technical support requirements. In sum, Richards fails to show that he is similarly situated to the other CSRs at the Norwich facility and he submits no evidence that he or any of the affiants are similarly situated to any CSR outside of Norwich.

    3.    <u>Richards Has Failed to Show Sufficiently that the Class of CSRs He Proposes May Have Lacked the Discretion and Independent Judgment Required for the Administrative Exemption.</u>

For a collective action motion, even a plaintiff's showing that he is similarly situated to the others he proposes for his class is worthless -- unless he shows that the class may have suffered a violation of the FLSA. *Marsh v. Butler County School System*, 242 F. Supp.2d 1086, 1095 (M.D. Ala. 2003) ("Without some factual basis for the assertion that FLSA violations stem from a particular formal or informal practice, the Plaintiffs cannot establish, even at the notice stage, that there is a pattern and practice of FLSA violations."). Richards' probative evidence on this point is wholly lacking. CSC has argued and provided evidence that the CSRs are exempt under the FLSA by virtue of the administrative exemption and the computer related exemption. In all of his briefs and affidavits, Richards addresses the administrative exemption only, and in a wholly

9

conclusory fashion. He ignores the computer related exemption. He offers nothing to counter CSCs' evidence that the CSRs are exempt from overtime because of this computer exemption (See CSC Brief in Opposition pp. 22-23). His failure to address this exemption compels the court to deny his motion.

Likewise, Richards' evidence directed toward the administrative exemption also fails. In each of the affidavits he submits, the affiant makes the conclusory assertion that he or she has no discretion and conducts trouble shooting over the phone using a database. But the bare assertions about discretion are legal conclusions not facts. And, whether the affiants use the phone and a database is entirely irrelevant to the question of whether they use their discretion and independent judgment under the administrative exemption. For that matter, lawyers conduct much of their business over the phone and using a database (Lexis or Westlaw). Nothing about using a database or a phone circumscribes the vast range of independent judgment a CSR must exercise to do his or her job for the particular customer and the particular SLA for which he or she is responsible.

Richards did not have to prove that CSC violated the FLSA with respect to his class at this stage. But he had to provide the court with more than bare, self-serving, conclusory assertions that simply echo the legal standard at issue, to vault a nationwide class of CSRs into his litigation. "Determining whether an employee is exempt is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing administrative duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.'" *Mike,* 274 F. Supp.2d at 220-21. CSC has

shown that such a detailed fact inquiry would be necessary for each CSR under the administrative exemption.

Class notice at this stage is discretionary, not mandatory, and it should only be permitted in appropriate cases. *Hayes v. Singer Co.*, 696, F2d 884, 86 (11th Cir. 1983). "[A] plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions, because without such a requirement, it is doubtful that 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Horne v. United Services Auto. Ass'n*, 279 F. Supp.2d 1231, 1234 (M.D. Ala. 2003). Richards cannot even establish similar job duties. His entire motion is based on job titles and his conclusory and hearsay affidavits about job titles. *See Freeman v. Wal-Mart Stores, Inc.*, 2003 US Dist Lexis 6664* (W.D. Ark. 2003) (rejecting collective action where Wal-Mart showed by affidavits that there were material differences in the job duties and responsibilities of the employees in the proposed class).

### III. CONCLUSION

Richards has failed to show that any CSR beyond Norwich has any desire to join his suit. Thus, his proposed national class fails. He has failed to show that he is similarly situated in duties and responsibilities to other CSRs either at Norwich or elsewhere. Thus, his motion fails entirely. Finally, he has not shown any facts to establish that CSC may have violated the rights of his class under the FLSA so that even if he did establish that he was similarly situated, his motion again fails entirely. Richards' motion for notice and class certification must be denied.

DEFENDANT,
COMPUTER SCIENCES
CORPORATION

By: _____
Tasos C. Paindiris (ct 16739)
William J. Anthony (ct 17865)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105
Tel. (860) 522-0404
Fax. (860) 247-1330

Lisa A. Schreter (ct 17647)
Jackson Lewis LLP
245 Peachtree Center Avenue, N.E.
1900 Marquis One Tower
Atlanta, GA 30303-1226
Tel. (404) 525-8200
Fax (404) 525-1173

## CERTIFICATION OF SERVICE

      This is to certify that a copy of the foregoing was sent by first class mail, postage prepaid, on this 22nd day of December, 2003, to the following:

      Michael J. Melly
      143 Oneco Avenue
      New London, CT  06320

_____
Tasos C. Paindiris