UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MARIO RICHARDS, on behalf of himself** : <br> **and all others similarly situated,** : <br> : <br> **Plaintiffs,** : <br> :    No. 3:03CV630(DJS) <br> **v.** : <br> : <br> **COMPUTER SCIENCES CORP.,** : <br>      **Defendant.** : <br> : | |

## MEMORANDUM OF DECISION AND ORDER

Plaintiff, Mario Richards, brings this action against defendant Computer Sciences Corporation ("CSC") alleging a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. Richards purports to bring claims on behalf of similarly situated CSC employees as a collective action pursuant to the FLSA. See 29 U.S.C. § 216(b). Now pending is Richards's motion to proceed as a collective action and to serve notice on other potential members of the class **[doc. #26]**. For the reasons set forth herein, Richards's motion is **GRANTED**.

### I. BACKGROUND

The plaintiff, Mario Richards, is a Customer Support Analyst ("CSA")Level I for CSC in Norwich, Connecticut. CSC provides information technology services–including consulting, systems integration and outsourcing–to companies around the world. Clients of CSC receive comprehensive technology support services, including access to "help desk" services that are geared toward the specific business needs of individual clients. Typically, a CSC client will contact the help desk assigned to provide services[1] and speak to a CSA Level I about the

---

[1] CSC has help desk services in Norwich and Las Colinas, Texas. The company has, in the past, operated a third help center in San Diego, California, but that center is now closed.

problem. The testimony of Richards and the affidavits of Amos Daniels, the manager of the help desk group in Texas, and Stephen Fenter, the manager of the group in Norwich, establish that a CSA Level I will handle simple problem solving tasks for a client over the phone. CSA Level I staff have limited access to a "knowledge base" which seems to be a central computer database that includes tips and instructions on solving routine and complex problems encountered by CSC's clients. A CSA Level I will consult the knowledge base and his or her own notes regarding a particular client's needs and then apply the available information to solving a client's problems. The tasks performed by a CSA Level I might involve setting up an email account, providing a replacement password, resolving conflicts between software programs such as Microsoft Word or Excel, or navigating a client's employee through a computer or system crash or minor networking problem. The services provided by CSA Level I staff will no doubt be easily envisioned by almost any home computer user or employee at a large office with a busy computer network.

     CSAs Level I are restricted in their duties. They are not empowered by CSC to solve all problems a client may have. CSAs Level I have limited access to the knowledge base and to client sensitive information such as passwords and administrative programs. A problem that is too complex or requires sensitive information not available to a CSA Level I will be referred to a CSA Level II. The CSAs Level II perform a function very similar to the CSA Level I, only with more access to information and client materials. Services are again provided over the phone and the CSA Level II is again limited to off-site instructions and tasks involving a limited level of access to client and knowledge base information, although the Level II has more access and authority than the Level I. A CSA Level II will periodically encounter problems that he or she is

not empowered to resolve, often for the same reasons of access and knowledge that prevent Level I staff from solving a client's problem. When such difficulties arise, a CSA Level II will contact a CSA Level III. A Level III staff person will usually be on-site with the customer and will have a greater level of access and knowledge of client-sensitive systems than the Level II. All parties acknowledge that a CSA Level III has a qualitatively different function than the Level I and Level II CSAs, both of whom operate solely via telephone calls.

     The CSC model of support requires the CSAs to be dedicated to a particular client. CSAs learn and work with the programs and systems used by a specific client or group of clients. CSAs may need to learn new or different programs and systems if they switch clients for any reason. The client-specific knowledge does not, however, bear any relation to the actual trouble-shooting services provided by either the CSA Level I or Level II staff. No matter what programs or systems are used by a particular client, the CSA Level I and Level II employees are always engaged as problem solvers or trouble-shooters via phone consultation as described herein.

     Richards alleges, essentially, that he has been denied overtime wages in contravention of the Fair Labor Standards Act. According to Richards, he is required to serve a full shift of eight and one-half hours on the phone handling customer problems. Prior to this shift, Richards must boot his computer, answer company e-mails and log on to the various applications and components that are used by the client he is assigned to assist during his shift. Upon completion of his shift, Richards claims that he must break down his computer and complete basic, routine maintenance on his equipment. Richards seeks regular and overtime wages for time he allegedly works beyond forty hours during each week. Specifically, he seeks overtime wages for the set-up and break-down tasks he performs each day. Richards claims that he is a salaried, non-exempt

employee under the FLA and its implementing regulations. Richards also claims that his duties and activities reflect the work done by all other CSA Level I and Level II staff, both in Norwich and Las Colinas, and he seeks permission of the court to proceed as a class action representative on behalf of all similarly situated employees of CSC.

CSC insists that Richards is an exempt employee because he is a trained professional engaged in decision-making tasks that require technical knowledge and discretionary authority. Further, CSC alleges that Richards is exempt by virtue of his status as an employee engaged in computer-related work. Defendant contends, finally, that a collective action is inappropriate because Richards has no knowledge of the work habits or expectations of all other CSAs and therefore cannot meet the required minimal legal burden.

## II. DISCUSSION

The FLSA states that no employer within the meaning of the Act "shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). This general mandate, however, does not apply to persons employed in a bona fide executive, administrative, or professional capacity. See 29 U.S.C. § 213(a)(1). A further exception exists for certain sub-classes of computer employees. See 29 U.S.C. §213(a)(17).

Richards moves for certification of a "collective action" under § 216(b) of the FLSA.[2]

---

[2] Section 216(b) of the FLSA provides in pertinent part:

An action . . . may be maintained against any employer . . . by any one or more

The FLSA allows one or more employees to pursue an action in a representative capacity for other similarly situated employees. See 29 U.S.C. § 216(b). This type of action allows potential class members who are similarly situated to the named plaintiff to "opt in" the case. Id.

"It is well settled that district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA." Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997) (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989); Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978)).

The issue presently before this court is whether the "appropriate circumstances" exist for the court to exercise its discretion and allow this action to proceed as a collective action. Id. The weight of authority from other jurisdictions appears to hold that the court should engage in a two-step inquiry: first, the court should allow plaintiff to proceed on a provisional basis upon a minimal evidentiary showing that plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b); and, second, the court should render a final decision regarding the propriety of proceeding as a collective action with the benefit of all evidence gathered in discovery including any additional plaintiffs.[3] See Hipp v. Liberty Nat'l. Life Ins. Co., 252 F.3d 1208, 1219 (11th

---

employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

[3] There is no decision by the Court of Appeals for the Second Circuit regarding the proper procedure for determining whether appropriate circumstances exist to allow a plaintiff to proceed as a collective action. For the purpose of this decision, the court will apply this analysis.

Cir. 2001).

The threshold issue in deciding whether to authorize class notice in an FLSA action is whether the plaintiff has demonstrated that potential class members are "similarly situated." Id. (citing 29 U.S.C. § 216(b)). "[C]ourts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffman, 982 F. Supp. at 261 (citing cases); see Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002); Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). The plaintiff bears the burden of establishing that he is similarly situated with the class he wishes to represent. Grayson v. K-Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). The burden is not heavy and may be met by making substantial allegations of violations supported by affidavits. Id. In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case.

The evidence provided by Richards in his briefs and the accompanying affidavits, coupled with the information provided by the defendant, is sufficient to show that common questions would predominate among the members of the proposed class. The affidavits provided by other CSAs employed at Norwich allege a substantial similarity in the work situations of all CSAs Level I and II. CSAs appear to perform essentially the same trouble-shooting tasks, although with differing levels of responsibility, and the pre-shift and post-shift requirements of the job seem relatively uniform. The court finds that enough evidence exist to permit discovery to proceed on the issue of a collective action.

CSC argues at length that the facts of the present action are similar to a series of decisions

rendered by this court holding that class certification under the FLSA must be denied where the proofs required to show that an employee is exempt are specific to the individual. See, Mike v. Safeco, 274 F.Supp.2d 216 (D.Conn. 2003); Mike v. Safeco, 3:02CV2239 (DJS), 2004 WL 1774833 (D.Conn. Aug. 5, 2004); Dean v. Priceline.com Inc.., No 3:00CV1273 (DJS), 2001 U.S. Dist. LEXIS 24982 (D.Conn. June 5, 2001). See also, Freeman v. Wal-Mart Stores, Inc., 256 F.Supp.2d 941 (W.D.Ark. 2003); Morisky v. Public Service Electric and Gas Co., 111 F.Supp.2d 493 (D.N.J. 2000). CSC points to the differences in the needs of the various clients served by individual CSAs as proof that no generalized determination of their duties can be achieved. According to the defendant, the variations in applications, components, industry and secrecy that exist among CSC's clients mandate that each CSA has a job unique and different from all other CSAs not assigned to the same client. The court is unpersuaded by this argument.

  Richards' testimony, taken together with the affidavits submitted by CSC and the descriptions provided of CSA job requirements, is sufficient to show that every CSA Level I is engaged in a job that is essentially the same as the job performed by all other CSAs Level I. Similarly, all CSAs Level II are engaged in functions substantially similar to all other CSAs Level II. The arguments of CSC amount to little more than proof that every CSA uses a different tool to accomplish the same task. An appropriate analogy would be to a team of floor cleaners, each assigned by a cleaning service to a different building. One building might have carpet, another tile and a third polished stone floors. Each floor cleaner would need a different skill set and tool set to accomplish his given task–but the essential task remains the same. Just as the first cleaner would require a vacuum and the second a waxing machine, so would one CSA need to create email passwords and another be able to resolve conflicts with various word processor

programs. Yet, the essential nature of the task–floor cleaning, or computer troubleshooting–remains the same. The testimony of the plaintiff and the CSC managers makes plain that all CSAs spend their days resolving application and network problems for their clients. The nature of the clients served and the specific applications used by each CSA are irrelevant to the court's determination of whether Richards and other CSA's are similarly situated.[4] CSC may show, when the court revisits the issue of class certification with the benefit of materials produced in discovery, that the various CSA's perform substantially different functions (i.e., not merely troubleshooting on different applications and components), but that showing has not yet been made.

      CSC argues that there is not enough similarity between the CSAs Level I and Level II for purposes of this action. Both parties to the case admit that CSAs Level II have a different level of authority and responsibility from CSAs Level I. The court finds that Richards has made allegations sufficient to proceed as a collective of both the CSAs Level I and Level II. The affidavits of a sampling of Norwich CSAs provides some evidence that CSAs Level II are merely a more expansive version of CSAs Level I and not a unique or more skilled class of employee. A CSA Level I could, it seems, become a Level II without enhanced education or computer programming skills. CSAs Level II continue to rely on the knowledge base for their work and, despite having greater integration with the individual clients, do no more than advanced trouble-shooting, as opposed to the basic trouble-shooting performed by CSA Level I staff. Again, the

---

[4]CSC also claims that the amount of time it takes CSAs to troubleshoot shows that they engage in dissimilar tasks. The court is not persuaded that the issue is relevant. Although the time a job takes can be a factor in determining whether something is professional or administrative, etc, time alone is insufficient to exempt a job from the requirements of the FLSA.

issue is whether the trouble-shooting functions performed by both CSA Level I and Level II staff are properly exempt from the requirement to pay overtime wages. There is, at present, no basis for distinguishing the issues that will arise for CSAs Level I from those that will arise for CSAs Level II.[5]

The exemption status of any employee must "be determined on the basis of whether his duties, responsibilities and salary meet all the requirements of the appropriate section of the regulations." 29 C.F.R. § 542.201(b)(2). Determining whether an employee is exempt is extremely individual and fact-intensive, requiring "a detailed analysis of the time spent performing administrative duties" and "a careful factual analysis of the full range of the employee's job duties and responsibilities." Cooke v. General Dynamics Corp., 993 F. Supp. 56, 59-61 (D. Conn. 1997). Applying the regulations interpreting the FLSA, an employee may be exempt if he or she spends more than 50% of his or her time performing executive, administrative, or professional work, or if he or she spends less than 50% of his or her time on these tasks, but these tasks nevertheless predominate or define his or her job. See 29 C.F.R. § 541.103; see also 29 C.F.R. § 541.206 (applying 29 C.F.R. § 541.103 to the administrative

---

[5]The same basic analysis applies to CSC's claim that CSAs perform different duties in Texas and Connecticut. The defendant does not state that CSAs have different job or work requirements in Texas when compared with CSAs in Norwich. Instead, CSC relies on the differences in clients and the company's need to satisfy those clients as proof that the CSAs are not similarly situated. The only direct evidence of the work done by Texas CSAs is the affidavit of Amos Daniels, manager of the help desk in Las Colinas. Daniels's statements lead the court to conclude that CSAs in Las Colinas are engaged in substantially similar work under substantially similar conditions as the CSAs in Norwich. Again, as with the alleged differences between CSAs Level I and II, the court will benefit from a more complete record compiled through discovery before rendering a final ruling on this issue.

exemption).[6] Although this court has, in <u>Mike</u> and <u>Dean</u>, determined that this legal standard would require too particularized an inquiry to permit a class to move forward, the facts of both cases differ from the present action.

The claim in <u>Mike</u> was necessarily unique to that case and is not replicated here. The <u>Mike</u> plaintiff argued to the court that he was required by his employer to perform only some of the tasks listed in his job-description, specifically the non-exempt tasks. The court reviewed the claims and determined that forming a class was impracticable. Every member of a potential class in <u>Mike</u> would have been required to show both that he or she was not performing all of the tasks listed in his or her job description and also that the tasks performed were non-exempt. There could be no unity in a class based on specific individual departures from the listed job description as the plaintiff's claim amounted to an allegation that every individual performed a discrete, and exempt, set of tasks within the same job class. The facts of the present action are such that Richards can prove that he and his fellow CSAs are engaged in the same tasks and that those tasks are not exempt. A particularized showing of individual activity is not necessary here on the same scale <u>Mike</u> would have required.

The plaintiff in <u>Dean</u> posed a similar problem for the court. There, the claim involved individuals with broad and often unrelated jobs. Here, the duties, responsibilities and salaries of the potential class members are more uniform than the class in <u>Dean</u>. Further, CSC's descriptions

---

[6]Defendant also raises as a defense the possibility that Richards and all other CSAs are exempt computer-related professionals. <u>See</u> 29 C.F.R. §541.401. The court has not yet determined the appropriate standard for application of these regulations and presumes that the parties will brief this issue more fully at a later stage of the litigation. At present, Richards's allegations do not suggest to the court that he is exempt pursuant to the plain language of the regulations. The court, however, will reserve analysis of this issue until the record and the parties' arguments are more fully developed.

of the work done by all CSAs does not show the same level of creativity and discretion that was inherent in the work done by the plaintiff in Dean. The court finds that Dean is not persuasive when applied to these facts.

### III. CONCLUSION

Ultimately, Richards has offered sufficient proof to persuade the court to permit him to pursue this case as a collective action pursuant to 29 U.S.C. §216(b). The CSAs Level I and Level II are all computer trouble-shooters engaged in substantially similar functions and exercising related responsibilities. The court and the parties will benefit from further discovery aimed at establishing the facts necessary to a final determination that Richards may proceed as a collective action. Richards's motion to proceed as a collective action **[doc. #26]** is **GRANTED**. The motion to serve notice **[doc. #26]** is also **GRANTED**. Further, the motion on consent for an extension of time **[doc. #73]** is **DENIED as moot**. The parties are ordered to submit a proposal for an amended scheduling order **no later than 30 days** after this decision is entered.

**IT IS SO ORDERED** at Hartford, Connecticut on this __28th__ day of September, 2004.

                                                /s/DJS
                                   **DOMINIC J. SQUATRITO**
                            **UNITED STATES DISTRICT JUDGE**