UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MARIO RICHARDS,<br>Plaintiff,<br><br><br>v.<br><br><br>COMPUTER SCIENCES CORPORATION<br>Defendant. | CIVIL NO. 3:03CV00630 (DJS)<br><br><br>JANUARY 6, 2005 |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Defendant, Computer Sciences Corporation ("CSC") submits this Memorandum in Opposition to Plaintiff, Mario Richards' Motion to Compel Discovery dated December 15, 2004. Plaintiff's Motion inaccurately portrays the status of discovery in this matter and seeks production of numerous documents Defendant has already agreed to produce pursuant to a Stipulated Protective Order for confidential information. Plaintiff, however, is unreasonably objecting to an appropriate confidentiality order. Additionally, Plaintiff's Motion seeks production of documents protected by the work product privilege and documents and information well beyond the proper scope of discovery in this case. Many of Plaintiff's requests are overbroad and seek information which is not relevant to the parties' claims and defenses. For the reasons set forth in more detail below, Plaintiff's Motion to Compel should be denied and there is no basis to award sanction to Plaintiff.

# I.    PROCEDURAL HISTORY

## A.    Pleadings

In April 2003, Plaintiff filed a Complaint on behalf of himself and others similarly situated alleging that Defendant failed to pay regular wages and overtime wages to employees who worked in excess of forty hours per week, in violation of the Fair Labor Standards Act 29 U.S.C. 201, et seq. ("FLSA").

Plaintiff began working for CSC as a Help Desk Customer Support Analyst ("CSA") in February 2001 and he is currently employed at CSC's Help Desk in Norwich, Connecticut. CSC contends that Plaintiff has been paid all wages due to him under the FLSA or any other applicable wage payment laws, and that Plaintiff was a salaried employee exempt from the overtime requirements of the FLSA pursuant to the administrative and/or professional exemption.

On September 2, 2003 Plaintiff filed a Motion for Class Certification seeking permission from the Court to proceed as a collective action on behalf of help desk CSAs in Connecticut, Maryland, Texas and California. On October 14, 2003 Defendant filed an Opposition to Plaintiff's Motion for Class Certification. Plaintiff filed a Reply to Defendant's Opposition on November 17, 2003 and Defendant filed a Sur-Reply on December 22, 2003. On September 28, 2004, the Court granted Plaintiff's Motion to Proceed as a Collective Action and ordered the Parties to submit a proposed scheduling order within 30 days. The Court granted the parties request for an extension of time until November 5, 2004 to file the proposed scheduling order. Defendant filed a Proposed Scheduling Order on November 5, 2004 and Plaintiff filed a Proposed Scheduling Order on November 9, 2004. On November 19, 2004, the parties filed a Motion for Approval of Notice and Consent forms to be sent to the Class.

To date the Court has not ruled on the Scheduling Order or the Motion for Approval of Notice and Consent forms.

**B.     Discovery**

Defendant served its first set of Interrogatories and Requests for Production on May 9, 2003 and Plaintiff responded on July 29, 2003. Plaintiff served his first set of Interrogatories on May 3, 2003 and Defendant responded on June 4, 2003. Plaintiff served Requests for Production on June 4, 2003 and Defendant responded on July 28, 2003. Defendant also supplemented its responses to Plaintiff's requests for production and supplemented its initial disclosures.

On July 29, 2003, Plaintiff filed a Motion to Compel discovery responses. Defendant also filed a Motion to Compel on September 24, 2003. On October 4, 2004, the Court denied, without prejudice, both parties' Motions to Compel and stated the following: "the motions to compel were filed without the benefit of the Court's ruling on Richards' motion to proceed as a collective action. The Court trusts that the parties will be able to resolve some or all of the discovery disputes presented in the pending motions in light of the court's recent decision."

Since then, counsel for the parties have engaged in numerous discussions and communications regarding discovery issues. Attorney Tasos Paindiris received a letter from Attorney Michael Melly on October 14, 2004 wherein Attorney Melly states that he was informed "of an investigation of the United States Department of Labor wherein an agreement is nearing between the DOL and CSC." Attorney Melly asked Attorney Paindiris to communicate

with him as soon as possible regarding this matter. (Exhibit 1: Affidavit of Tasos Paindiris at ¶5).[1]

In a conversation between Attorney Paindiris and Attorney Melly on that same day, Attorney Melly accused CSC and the DOL of conspiring to commit fraud against the employees of CSC.  Attorney Paindiris denied these baseless accusations and attempted to discuss with Attorney Melly whether the parties could reach agreement on discovery issues. (Exhibit 1, ¶6).  During the October 14, 2004 conversation, Attorney Melly also stated that he expected Defendant to produce all of the documents and information Plaintiff requested in his previous Motion to Compel, which was denied by the Court.  Attorney Paindiris responded that despite the Court granting Plaintiff's class motion, many of the requests remain overbroad and immaterial.  Attorney Melly then agreed that some of the requests are overbroad and stated that he was willing to narrow them. (Exhibit 1, ¶7).

On October 14, 2004 Attorney Paindiris also reminded Attorney Melly that a proposed Joint Scheduling Order was due in eight or nine days.  Attorney Melly indicated that Plaintiff may not cooperate with Defendant in preparing a Scheduling Plan.  Attorney Paindiris told him that was unacceptable and if Plaintiff was not going to cooperate, Defendant would file its own proposed Scheduling Plan.  Attorney Paindiris also told Attorney Melly that proposed Notice of Class Action and Consent to Join Class Action forms would have to be prepared and submitted to the Court for approval.  At the conclusion of the conversation the parties agreed to continue discussions relating to discovery at a later date. (Exhibit 1, ¶8).  On October 15, 2004, Attorney Melly stated that he would draft a proposed Scheduling Order and the Notice and Consent forms. (Exhibit 1, ¶9).

---

[1] Hereinafter "Exhibit 1 ¶___."

In a conversation on October 26, 2004, the parties discussed deadlines for Defendant to produce the names and addresses of current and former Help Desk Analysts who would be eligible to opt in. Plaintiff requested the names of Help Desk Analysts for three years prior to the commencement of the litigation. Defendant responded that the time period was overbroad and that it would produce a list of these individuals for three years prior to the Court granting Plaintiff's Motion to Proceed as a Collective Action. (Exhibit 1, ¶10).

During the October 26, 2004 conversation Attorney Melly also stated that he was considering sending Notice and Consent forms to the class prior to obtaining Court approval of such forms. Attorney Paindiris responded that it would be improper to do so and that Court approval was required, particularly if the parties could not agree on all of the terms in the forms. (Exhibit 1, ¶11). In a conversation with Attorney Melly on November 3, 2004 Attorney Paindiris asked him if he was intending to submit the proposed Notice and Consent forms to the Court for approval and he responded that he wanted to proceed that way. (Exhibit 1, ¶13).

On October 27, 2004 Plaintiff sent Defendant a draft Joint Scheduling Plan for review. (Exhibit 1, ¶12). Defendant responded with its proposed revisions to the draft Joint Scheduling Plan on November 4, 2004. (Exhibit 1, ¶14).

On November 5, 2004, Attorney Paindiris spoke to Attorney Melly about the Joint Scheduling Plan and they could not agree on certain provisions. In that conversation Attorney Melly said he was going to send Notice and Consent forms to the class and was not going to wait for Court approval. At the conclusion of the discussion, the parties agreed they would file their own proposed Scheduling Plan with the Court as they could not agree on certain significant matters. (Exhibit 1, ¶15). Defendant filed its proposed Scheduling Plan on November 5, 2004. (Exhibit 1, ¶16).

On November 9, 2004 Attorney Melly and Attorney Paindiris continued discussions regarding discovery and Defendant agreed to produce certain documents and information. (Exhibit 1, ¶17).

On November 11, 2004 Attorney Paindiris sent Attorney Melly a letter regarding the production of the names and addresses of current and former Help Desk Analysts who would be eligible to participate in the lawsuit.[2] Attorney Paindiris informed Attorney Melly that based on Attorney Melly's representations that he would "not submit the form to the Court for approval, we do not intend to produce the names and addresses at this time and we have asked the Court in Defendant's Proposed Scheduling Order for an immediate Rule 16 Conference to discuss these issues." (Exhibit 1, ¶18).

Defendant has agreed to produce the names and addresses once the Court approves the Notice and rules on an opt in period for the class. Defendant is only withholding this information from Plaintiff due to Attorney Melly's affirmative representations that he would send a Notice to the class without Court approval or a ruling on the opt in period. (Exhibit 1, ¶19). Attorney Paindiris also informed Attorney Melly on November 11, 2004 that Defendant would try to provide him with those documents and information on which the parties agreed "within the next 30 days or so." (Exhibit 1, ¶20).

Plaintiff sent a draft Notice of Class Action form and a draft Consent to Join Class Action form to Defendant on November 11, 2004. (Exhibit 1, ¶21). Defendant responded with proposed revisions to the forms on November 17, 2004. The parties agreed on the content of the forms except for one item—the deadline for potential class members to opt in. Defendant proposes an opt in period not to exceed 60 days and Plaintiff proposes an opt in period lasting until 30 days before the end of discovery. (Exhibit 1, ¶22). The parties filed a Joint Motion for

---

[2] A copy of the letter is attached to the Paindiris Affidavit as Exhibit A.

Approval of the Notice and Consent forms on November 19, 2004 and requested that the Court rule on the opt in period. That Motion is currently pending before the Court.

On December 1, 2004 Defendant supplemented its initial discovery responses by producing certain correspondence between CSC and the U.S. Department of Labor. (Exhibit 1, ¶24). On December 10, Attorney Melly told Attorney Paindiris he was going to file a Motion to Compel prior to the scheduled status conference on December 20, 2004. Attorney Paindiris asked him if his Motion would include those items Defendant has agreed to produce and was in the process of compiling and Attorney Melly said it would. Attorney Paindiris responded that it would be more efficient to see what Defendant produced first as those documents would be forthcoming very soon. Plaintiff acknowledged that certain items in his Motion to Compel would likely be moot once Defendant supplemented its discovery. (Exhibit 1, ¶25).

On December 13, 2004 Defendant faxed Plaintiff a proposed Stipulated Protective Order for the production of confidential documents and information.[3] Attorney Paindiris requested that Attorney Melly review the terms and if they were acceptable, to sign and return it. (Exhibit 1, ¶26). On December 15, 2004, Attorney Paindiris sent Attorney Melly a follow up letter stating he had not heard from Attorney Melly regarding the proposed Stipulated Protective Order and that Defendant has documents ready to be produced subject to the Order.[4] (Exhibit 1, ¶27). Plaintiff filed his Motion to Compel on December 16, 2004.[5]

On December 23, Attorney Melly called Attorney Paindiris and stated he did not want to sign a Confidentiality Order. He initially stated that Defendant never objected to discovery on those grounds and Attorney Paindiris pointed out that in fact Defendant did so object in its original discovery responses. Attorney Melly then claimed that such an Order was

---

[3] A copy is attached to the Paindiris Affidavit as Exhibit B.
[4] A copy of the letter is attached to the Paindiris Affidavit as Exhibit C.
[5] Defendant received the Motion on December 16, 2004.

unnecessary and that Defendant should produce the documents first, then Plaintiff would decide which documents he would agree to subject to a Confidentiality Order.  Attorney Paindiris told him that was unacceptable, it defeats the purpose of a Confidentiality Order, and that Defendant would agree to a provision in the Order to provide a mechanism to object to a party's confidential designation of documents. (Exhibit 1, ¶28).

Attorney Paindiris again informed Attorney Melly that Defendant was prepared to produce additional documents and information subject to a confidentiality order as the information he requested in discovery contains confidential proprietary information of CSC and confidential personnel data.  Attorney Paindiris also informed Attorney Melly that Defendant would agree to provide Plaintiff with the opportunity to object to the designation of documents as confidential. (Exhibit 1, ¶29).  To date the parties have not agreed to a Confidentiality Order. (Exhibit 1, ¶30).[6]

## II.    THE STANDARD FOR DISCOVERABLE INFORMATION

Plaintiff's Motion to Compel should be denied.  Under Federal Rule of Civil Procedure 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed.R.Civ.P. 26(b)(1).  Upon a showing of good cause, the Court may order "discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1).  Courts have "broad authority under the Federal Rules of Civil Procedure to regulate or preclude discovery where appropriate." Hyundai v. Merchant Marine Co. v. United States, 159 F.R.D. 424, 429 (S.D.N.Y. 1995).  "With this authority at hand,

---

[6] Throughout the discussions during the months of October and November, Attorney Paindiris was diligent in responding to and making time for lengthy conversations with Attorney Melly regarding this matter.  Attorney Paindiris explained to Attorney Melly that he had limited availability as he was preparing for a trial that was scheduled before Judge Dorsey on November 30, 2004, and they often scheduled specific dates and times for calls.  Additionally, there were numerous occasions when Attorney Paindiris attempted to communicate with Attorney Melly via e-mail during or after business hours and received a response that the e-mail transmission failed.  When Attorney Paindiris asked Attorney Melly about this he confirmed that he had been having trouble with his e-mail system. (Exhibit 1, ¶31).

judges should not hesitate to exercise appropriate control over the discovery process." Id. (citation omitted). "[C]ourts should not allow parties to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." Spina v. Our Lady of Mercy Med. Center, No. 97 Civ. 4661 (RCC), 2001 U.S. Dist. LEXIS 7338, *6 (S.D.N.Y. June 7, 2001)(citation omitted).

## III.    DEFENDANT'S RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS

### A.    Interrogatory Nos. 2 & 3: Names and addresses of current and former customer support analysts

#### 1.    Defendant Has Agreed to Produce the Names and Addresses.

Defendant has agreed to produce the names and addresses once the Court approves the Notice and rules on an opt in period for the class. Defendant is only withholding this information from Plaintiff due to Attorney Melly's affirmative representations that he would send a Notice to the class without Court approval or a ruling on the opt in period.

When Defendant agreed to produce the list of current employees by November 12, 2004, it was based on the understanding that the following also would occur: (1) Plaintiff would provide Defendant with a proposed Notice and Consent form; (2) Plaintiff would give Defendant an opportunity to review and comment on the form to determine whether the parties could come to mutual agreement on the content of the form; (3) the parties would submit the form to the Court for approval, along with any areas of disagreement; and (4) the form would be sent to the class after Court approval of its contents and a ruling on any areas of disagreement. At this time, there is a significant point of disagreement—the deadline for opting in.

The Plaintiff's own proposed scheduling order reflects this understanding. Specifically, it states the following:

Notice and consent forms *shall be presented to the court for approval*, if the parties cannot agree, on or before November 30, 2004.    Plaintiff shall send notice and consent forms to those persons whose names and addresses are provided by the defendant on or before 45 days *after court approval of the notice and consent forms*.    Plaintiff shall send notice and consent forms to those persons whose names and addresses are provided by the defendant *after approval of notice*, on or before 45 days after receipt of those names and addresses from the defendant.    Plaintiff shall send notice to those persons who plaintiff determines are members of the class whose names and addresses were not provided by the defendant.

(Exhibit 1, ¶ 18) (Emphasis added).

As such, Defendant reasonably believed the parties were in agreement that a proposed Notice and Consent form would be presented to the Court for approval and that the form would not be sent to class until after Court approval of the form and ruled on any areas of disagreement.  When Attorney Melly and Attorney Paindiris spoke again on November 5, 2004 to try to finalize a Joint Scheduling Plan, Attorney Melly informed Attorney Paindiris that he was going to start his own notice at that time and that he was not going to wait for Court approval.

Plaintiff did not even provide Defendant with proposed Notice and Consent forms until November 11, 2004.  Shortly thereafter the parties agreed on the content of the forms except for one item—the deadline for potential class members to opt in.  Defendant proposes an opt in period not to exceed 60 days and Plaintiff proposes an opt in period lasting until 30 days before the end of discovery.

The parties filed a Joint Motion for Approval of the Notice and Consent forms on November 19, 2004 and that Motion is currently pending before the Court.  Defendant maintains its position that the Court must approve the content of the Notice and Consent form, particularly

where there is disagreement over the length of the opt in period, and a ruling is required on that issue. Surely a notice cannot be sent to the class without a deadline for opting in

Plaintiff claims in his Motion to Compel that "as soon as this matter was certified as a collective action plaintiff's counsel began his attempts to obtain the names and addresses . . . ." (Pl. Mem. at 3). However, Plaintiff never even drafted a proposed Notice to the class until November 11, 2004, over six weeks after the Court's Order granting him permission to send notice. Moreover, it is Plaintiff who changed his position from agreeing to submit the proposed Notice to the Court for approval to sending the Notice without approval, thereby requiring Defendant to withhold the names to avoid Plaintiff's interference with the Notice process.

### 2. Plaintiff Makes Inaccurate and Baseless Accusations Regarding the U.S. DOL's Involvement in This Matter.

Plaintiff also raises in his Motion to Compel the issue of Defendant's discussions with the U.S. Department of Labor. As explained to Plaintiff and described in documents produced to Plaintiff, CSC conducted a self audit of the FLSA status of roughly 3,000 employees pursuant to an agreement with the DOL. The self audit includes, but is not limited to, the employees in the class certified by the Court in this case. As part of the self audit, CSC calculated back pay for overtime worked prior to the audit. There has been no back pay offered to the employees in the class, nor has there been any direct communication with them by CSC in an "attempt at settling these claims" as alleged by Plaintiff in his Motion. (Pl. Mem. at 5). Plaintiff makes completely unfounded and baseless allegations of "sneaky dealing" with absolutely no evidence to support them and with absolutely no relevance to the issues presented in his Motion to Compel.

3.    **Plaintiff's Request to Include Individuals Employed for Three Years Prior to Filing of the Complaint is Overbroad.**

It is well established that in an FLSA collective action suit, the statute of limitations continues to run until the plaintiff files a written consent opting into the suit. A collective action suit begins for any individual plaintiff only:

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.
>
> 29 U.S.C. §256.

"An FLSA collective action suit is not a typical class action subject to Fed. R. Civ. P. 23, in which a potential plaintiff is included as a class member unless he chooses to opt out of the class." El, et al. v. Potter, 2004 U.S. Dist. LEXIS 24447 at *24-25 (S.D.N.Y. Dec. 13, 2004) (citing Cahill v. City of N.B., 99 F. Supp. 2d 464, 478 (D.N.J. 2000)). Any plaintiff "must file written consents in order to begin their lawsuits, and the courts have made clear that a suit does not begin until a consent has been filed." Id. at *25 (citing Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 101, 104 (S.D.N.Y. 2003) ("only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled"); Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 260 (S.D.N.Y. 1997) (same); Hasken v. Louisville, 234 F.Supp.2d 688, 691 ("The statue of limitations [in an FLSA collective action case] continues to run as to each individual plaintiff until he or she files a written consent to become part of the action.")) (Additional citations omitted).

Therefore, anyone whose employment terminated more than three years ago would not have a timely claim. In other words, if an individual opted in today, the statute of limitations would bar any claims prior to January 2002. As such, Plaintiff's request for three years prior to commencement of suit in April 2003 is overbroad to the extent it includes individuals whose claims are barred by the statute of limitations.[7]

## B.    Interrogatory 19: Investigations and inquiries

### 1.    Documents relating to the DOL self-audit

Defendant has already produced written correspondence between CSC and the DOL relating to the self audit. Plaintiff claims that Defendant is withholding documents relating to the self-audit of the CSAs who are members of the class in this case, specifically the spreadsheets reflecting the overtime hours and pay calculations conducted by Defendant as part of the self-audit for DOL. As Plaintiff acknowledges in his Motion, Defendant has agreed to produce this information but has requested that it be subject to an appropriate Confidentiality Order. The information requested by Plaintiff contains confidential personnel information about employees and should be protected. Defendant provided Plaintiff with a proposed Confidentiality Order but Plaintiff refused to sign it.

### 2.    Other investigations and inquiries

Plaintiff claims that Defendant "should be required to disclose *all* investigations regarding wage and overtime issues as they are relevant to this case." (Pl. Mem. at 6) (Emphasis added). As an initial matter, the request is vague as to what it means by "investigations" and "wage and overtime issues." Moreover, the request is completely overbroad and not at all relevant to the claims in this case, nor is it reasonably calculated to lead to the discovery of

---

[7] Defendant in now way waives its position that the proper statute of limitations in this case will be two years. The three year statute of limitations applies only if the court finds a willful violation

admissible evidence. CSC has 91,000 employees throughout the world. The class in this case likely involves a few hundred employees in a few states. "All investigations" relating to these tens of thousands of employees who work in different business groups and functional areas cannot be discoverable in this case.

To the extent Plaintiff seeks discovery into a specific matter, he identifies an investigation or inquiry that was conducted in 2003. (Pl. Mem. at 6-7). The investigation which Plaintiff incorrectly refers to as an "HR Survey" was in fact an investigation conducted by attorneys for Defendant, Jackson Lewis LLP, *after* commencement of the litigation. After the Complaint was filed and Jackson Lewis was retained to represent Defendant in this matter, attorneys from Jackson Lewis went to the CSC facility in Norwich, Connecticut and interviewed various employees, including Help Desk Analysts, to investigate the claims made in Plaintiff's complaint. The documents relating to this investigation consist of the questions developed by counsel for the interviews and the notes taken by counsel during the interviews.

It is well established that these documents and information are protected by the work product and/or attorney-client privilege. Upjohn Co. et al. v. United States, et al., 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981) (the questionnaires and memoranda and notes of interviews conducted by inside and outside counsel are protected from disclosure by the attorney-client privilege and constitute the work produce of attorneys prepared in anticipation of litigation); Hickamn v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) (no right to production of notes of witnesses interviewed by attorneys in anticipation of litigation).

There can be no dispute that the interviews conducted by counsel and the notes taken by counsel are directly related to the litigation and were produced by counsel in the course of defending CSC in this very case. The Second Circuit has held that in litigation written

14

responses to questionnaires and notes and memoranda by attorneys based upon oral interviews

are protected by work product.

> When we apply the work-product rule, however, the issue is not
> whether a particular employee comes within the ambit of the
> attorney-client privilege, but whether the communication to the
> corporate attorney by the employee is in furtherance of the
> attorney's duty to investigate the facts in order to advise the
> corporate client in anticipation of litigation.

In re Grand Jury, 599 F.2d 504, 510 (2d. Cir. 1979). The Court in Hickman further addressed

this issue when it stated

> But as to oral statements made by witnesses to (the attorney) . . .,
> whether presently in the form if mental impressions or memoranda,
> we do not believe that any showing of necessity can be made under
> the circumstances of this case so as to justify production . . . . No
> legitimate purpose is served by such production. The practice
> forces the attorney to testify as to what he remembers or what he
> saw fit to write down regarding witnesses' remarks. Such
> testimony could not qualify as evidence; and to use it for
> impeachment or corrobative purposes would make the attorney
> much less an officer of the court and much more an ordinary
> witness. The standards of the profession would thereby suffer."

Hickman, 329 U.S. at 512-13. The notes taken by Defendant's counsel when interviewing CSC

employees after the commencement of this action are simply not discoverable.

Plaintiff's claim that Defendant somehow waived any privilege by failing to

identify these notes on a privilege log is also baseless. Local Rule 37(a)(1) specifically states the

following:

> This rule requires preparation of a privilege log with respect to all
> documents withheld on the basis of a claim of privilege or work
> product protection *except the following*: written communications
> between a party and its trial counsel after commencement of the
> action *and the work product material created after commencement
> of the action.*

L.Civ.R.37(a)(1) (Emphasis added). As stated above, the documents Plaintiff seeks to discover are notes of outside counsel based on questions asked of CSC employees after commencement of the action in the course of investigating the allegations in the Complaint. That is exactly the type of document that the rule excludes. Otherwise, counsel would be producing a log of their entire internal file throughout the course of the case, a bizarre result surely not intended by the Rules.

Plaintiff's blanket assertion in his Motion that "an employer may not prevent discovery of attorney investigations on the basis of work product or attorney client privilege" with cases cited purporting to support that assertion is wholly inaccurate and misrepresents well established precedent. (Pl. Mem. at 7-8). For example, in Pray v. The New York City Ballet Company, 1997 U.S. Dist. LEXIS 6995 (S.D.N.Y. May 19, 1997), a case cited by Plaintiff, the Court held that where an employer relies on an internal sexual harassment investigation and subsequent corrective action for its defense, it has placed that conduct in issue. Thus, an employer may not prevent discovery of such an investigation based on attorney-client or work product privileges solely because the employer hired attorneys to conduct the investigation. Plaintiff's citation to Pray is misleading because that is not the issue presented here—the investigation Plaintiff seeks to discover has in no way been raised by Defendant as part of its investigation.

Plaintiff also cites to Harding v. Dana Transport, 914 F. Supp. 1084 (D.N.J. 1996). In that case the Court upheld the privilege as to certain documents relating to employee interviews, but found that some documents at issue in that case were not protected by the work product privilege because they were *not* prepared in anticipation of litigation. Again, that is not the issue here as there is no dispute that the interview notes Plaintiff requests were taken by

outside counsel after the lawsuit was filed and that the interviews were based on the claims made in this lawsuit.

The third case cited by Plaintiff, <u>Walsh v. National Westminster Bancorp</u>, 921 F.Supp. 168 (S.D.N.Y. 1995), does not even address the work product doctrine or a dispute over the production of documents. It is a summary judgment decision in a sexual harassment and retaliation claim having nothing to do with the proposition for which Plaintiff cites it.

Plaintiff has not identified any other non-privileged investigations or inquiries into the overtime status of the help desk analysts who are members of the class that should be produced and his Motion to Compel should therefore be denied as to this issue.

**C.    Interrogatory 7: Names of Human Resources employees**

Defendant agrees to produce the name, job title and business addresses of HR staff in the locations with Level I and II help desk staff and the name, job title and business address of corporate HR staff subject to the terms of a Stipulation for Confidentiality, however, Plaintiff has refused to enter into such a stipulation.

Plaintiff is not entitled to the names of all HR employees throughout the country as such information is not relevant to the claim or defense of any party nor is it reasonably calculated to lead to the discovery of admissible evidence.

**D.    Interrogatory 9: Training provided to Human Resources employees**

Defendant agreed to produce training materials relating to training of Human Resources staff on FLSA/wage & hour issues from 2000 to date, however, Defendant has requested that Plaintiff execute a Stipulation for Confidentiality. To date, Plaintiff has refused to do so and Defendant has withheld those documents on that basis.

To the extent Plaintiff's request extends to training of Human Resources personnel beyond FLSA and wage/hour issues, his request is overbroad and irrelevant to the

claims and defense of either party. Plaintiff's request is also overbroad in the time period it seeks to cover. Specifically, Plaintiff's Interrogatory 9 requests the following for *all* employees performing human resource functions at *any* facility for the period from *1992* to date:

    a.    regular training or education provided to employees, including contract, temporary or vendor employees, including the name of the training/education course, title and subject and a description of the subject areas and the dates and place of such training/education for each employee;

    b.    training or education provided to each employee including the name of the training/education course, title and subject and a description of the subject areas and the dates and place of such training/education;

    c.    the job title of each person receiving training referred to in sub-part a&b;

    d.    state the above for any contractor, sub-contractor, temporary worker or vendor working in such capacity;

    e.    state the above for any person working in such capacity since 1992.

The Complaint alleges that Defendant failed to pay regular wages and overtime wages to employees who worked in excess of forty hours per week, in violation of the FLSA. Plaintiff has made no argument in his Motion nor any other attempt at showing how the extensive information requested in this Interrogatory can in any way be relevant to the parties' claims and defenses. There is simply no logical connection between Plaintiff's expansive discovery requests and the claims alleged in the complaint. As uniformly recognized by the district courts, such an approach is not contemplated by the rules of discovery. H&R Block, Ltd. v. Housden, et al., 186 F.R.D. 399, 401, 1999 U.S. Dist. LEXIS 10468 (E.D. Tex. 1999) ("employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense."). See also Fed.R.Civ.P. 2000 Notes of Advisory Committee, ¶23 (commenting regarding amendments to address concerns regarding overbroad discovery and parties who "seek to justify discovery requests that sweep far beyond the claims and defenses of the parties"). The current rules defining the scope of discovery as matters "*relevant* to the claim or defense of any party" does not permit Plaintiff to obtain the extensive information he is

requesting. Fed.R.Civ.P. 26(b)(1) (Emphasis added). It is inconceivable how over 10 years of information relating to *all* training received by *all* human resources personnel in a Company of over 90,000 employees can be discoverable and Plaintiff's Motion on this issue should be denied.

**E.**    **Requests for Production 8, 9 &10: Organization Charts**

Plaintiff seeks organization charts for Defendant's corporate facilities located at Falls Church, Virginia and El Segundo, California. Plaintiff also seeks an organization chart for any and all facilities employing help desk employees.

Defendant agrees to produce a CSC Corporate organization chart, an organization chart for the GIS business group (which includes the help desk employees), and the GIS Human Resources organization chart. Defendant also agrees to produce an organization chart for U.S. help desk locations. These organization charts will be produced pursuant to a Stipulated Protective Order for confidential information. As stated above, Defendant provided Plaintiff with a proposed Protective Order and Plaintiff has refused to sign it.

**F.**    **Interrogatory 10: Management or supervisory persons**

Plaintiff requests the names and addresses of all management persons at the Falls Church, Virginia and El Segundo, California locations, as wells as at all facilities employing help desk employees. Defendant has agreed to produce the above referenced organization charts with names certain executives and help desk management pursuant to a Stipulated Protective Order and to produce the names of individuals in the help desk organization.

To the extent Plaintiff seeks the identity of all employees in El Segundo and Falls Church in a management capacity, such information is not relevant to the claims and defense of any party. Plaintiff has not identified any management personnel or groups who he believes were involved in FLSA or wage/hour issues outside of the help desk organization.

### G.    Interrogatory 11: Job descriptions

Plaintiff correctly states that Defendant has produced documents relating to the job descriptions for the CSA position, which is the *only* position certified as a class in this case. Now Plaintiff seeks a job description for *all* positions coming within the purview of "Associate Member Technical Staff."

Associate Member Technical Staff ("AMTS") is a general job classification used by CSC in its Technical Family Classification Structure. Additional technical job classifications include Senior Member Technical Staff, and Computer Scientist. There are numerous specific functional specialties, or job titles, within AMTS and the other general job classifications. Of the many job titles in the AMTS general classification are the Level I and II Help Desk analysts who comprise the class in this case. Defendant has therefore produced documents describing the general AMTS job classification and job descriptions of the Help Desk positions within that classification that are included in the class. Now Plaintiff seeks job descriptions of specific job titles that are not even members of the class. There are numerous other technicians performing various systems and network functional specialties that have nothing to do with the help desk function certified as a class in this case, yet Plaintiff seeks discovery of all of the job titles with no rationale whatsoever to support such a request. Plaintiff's Motion as to this request should therefore be denied.

### H.    OPUS Reports

Defendant has implemented a productivity tracking system called "OPUS" which includes information relating to the number of customer calls a help desk analysts takes and the amount of time spent on calls.[8] These reports contain highly confidential proprietary information concerning Defendant's business systems and operations. Defendant has agreed to produce these

---

[8] OPUS stands for Operations Productivity & Utilization System

reports for individuals who opt into the case, however, the confidential nature of this information must be protected. Again, Defendant requested that Plaintiff enter into a Stipulated Protective Order for confidential information but Plaintiff has refused to do so.

**I.    Interrogatory 12: Billing rate and method information**

Plaintiff's Interrogatory 12 seeks the following information:

The billing rate, method and frequency of billing to clients of CSC for work performed by computer system analysts, and:

a.    If there is more than one billing rate or method, state the name of the client for each such rate or method.

b.    If billing rate or method was changed, the date and nature of said change.

The claims in this case arise out of Plaintiff's allegation that he and the members of the class were misclassified by Defendant as exempt from overtime under the FLSA and as a result are due back wages for overtime hours worked.

Under the FLSA and its regulations, and employee may qualify as exempt from overtime under the administrative exemption if the employee's "primary duty" consists of performing non-manual work, involving the exercise of discretion and judgment, that is "directly related to management policies or general business operations of his employer or his employer's customers." 29 C.F.R. §§ 541.2(a)(1) & (e)(2). In other words, it is an employee: (1) whose "activities" relate to the "administrative operations of a business," rather than "production" or "sales" work; (2) whose work "is of substantial importance to the management or operation of the business" of his employer or its customers; and (3) whose work includes "the exercise of discretion and independent judgment." See 29 C.F.R. §§ 541.2 (e)(2) & 541.205(a). The FLSA also provides that certain computer related occupations are exempt. To be eligible for this exemption the employee's primary duty must consist of one or more of the following: (1) the application of systems analysis techniques and procedures, including consulting with users, to

21

determine hardware, software, or system functional specifications; (2) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications; (3) the design, documentation, testing, creation or modification of computer programs related to machine operating systems; or (4) a combination of the aforementioned duties, the performance of which requires the same level of skills. See 29 C.F.R. § 541.303.

Thus, the only issue presented is whether the actual job duties performed by Plaintiff and other members of the class satisfy these requirements.[9]  As such, there is no basis for Plaintiff to request discovery of Defendant's billing rates, methods and frequency.  CSC provides information technology ("IT") services to companies throughout the world, including consulting, systems integration and outsourcing.  CSC's outsourcing services offer customized IT solutions, which can include custom tailored "Help Desk" services for the specific business needs of the client.  The Help Desk provides 24 hour a day, seven day a week single point of consultation service for the client for all technical problems, requests, services, and inquiries.  How much, how, and how often CSC bills its clients for these services are completely irrelevant to the claims and defenses in this case, which relate solely to the job duties of the help desk analysts.

The only justification Plaintiff provides for this request is that Defendant's actions in requiring "CSA's to perform overtime without pay while billing and being paid by clients for said work is unconscionable and relevant to intent, willfulness, fairness and liquidated damages." (Pl. Mem. at 11).  Plaintiff's argument completely misses the point.  Under the FLSA, a Plaintiff may be entitled to liquidated damages unless the Defendant demonstrates that Plaintiff was

---

[9] To qualify as exempt, an employee must also be paid on a salary basis and must meet certain minimum salary levels.  Plaintiff does not dispute this aspect of the FLSA exemption and appears to be focusing only on the job duties test.

classified as exempt in good faith, in which case no liquidated damages are awarded. 29 U.S.C.

§255; McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988) (employer does not commit a

willful violation of the FLSA unless it knew or showed reckless disregard for the matter of

whether its conduct was prohibited by the FLSA). Thus, the issue in this case is how Plaintiff

was classified under the FLSA, not how CSC bills its clients. How CSC bills its clients has

nothing to do with whether CSC violated the FLSA in its classification of CSAs. There is no

link between how clients are billed and the reasons or basis for classifying employees as exempt

from overtime, nor has Plaintiff even purported to establish such a link. The rate and method of

billing can in no way show the employees at issue were not paid properly, this information is not

relevant to the claims and defenses of a party, and it is not within the proper scope of discovery

under Rule 26(b)(1).

## IV.    <u>PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED</u>

As set forth herein, Defendant's objections to Plaintiff's discovery requests are

entirely appropriate and there is no basis for Plaintiff's request for sanctions. Plaintiff filed a

Motion containing numerous inaccuracies and omissions regarding Defendant's compliance with

discovery to date. Defendant has not objected to many of the documents requested by Plaintiff

but has reasonably requested that the information be produced pursuant to a Protective Order to

protect confidential information. Plaintiff has refused to enter into a confidentiality agreement

and Defendant has withheld certain confidential documents on those grounds. Plaintiff's Motion

also presents misleading case cited to the Court for its consideration in this Motion and as a

result has required Defendant to spend unnecessary time researching and responding to his

baseless claims. If anyone has caused unnecessary the proceedings in this matter it is Plaintiff.

Defendant has responded in good faith by producing discoverable information in

response to Plaintiff's requests and Plaintiff's request for sanctions should be denied.

## V.    **CONCLUSION**

For all of the foregoing reasons, Defendant should not be compelled to respond further to Plaintiff's discovery requests as submitted and Plaintiff's Motion to Compel should be denied.

DEFENDANT,
COMPUTER SCIENCES CORPORATION

By:

William J. Anthony (ct 17865)
Tasos C. Paindiris (ct 16739)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT  06105
Tel: (860) 522-0404
Fax: (860) 247-1330
E-mail: anthonyw@jacksonlewis.com
E-mail: paindirt@jacksonlewis.com

Lisa A. Schreter (ct17647)
Jackson Lewis LLP
245 Peachtree Center Avenue, N.E.
1900 Marquis One Tower
Atlanta, GA  30303-1226
Tel. (404) 525-8200
Fax. (404) 525-1173
E-mail: schretel@jacksonlewis.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent by first class mail, postage prepaid, on this 6th day of January, 2005, to the following:

Michael J. Melly, Esq.
Mullins & Michaud LLC
682 Prospect Avenue
Hartford, CT 06105


_____
Tasos C. Paindiris